UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| DEYSSI JANNETH PRADO-GUAJARDO,<br><br>Plaintiff,<br>vs.<br><br>MARTIN GUZMAN PEREZ and El RAYO,<br><br>Defendants. | Case No. 2:16-cv-00546-GMN-VCF<br><br>**REPORT AND RECOMMENDATION** |
| MARTIN GUZMAN PEREZ,<br><br>Third-Party Plaintiff,<br>vs.<br><br>SHAYNA DIAZ,<br><br>Third-Party Defendant. | |

Before the Court is Third-Party Defendant Shayna Diaz's Supplemental Brief (ECF No. 44) and Defendant/Third-Party Plaintiff Martin Guzman Perez and Defendant El Rayo's (collectively, "Perez") Response (ECF No. 45) regarding Diaz's Motion for Determination of Good Faith Settlement (ECF No. 38). Plaintiff Deyssi Janneth Prado-Guajardo moved to join Diaz's Motion for Good Faith Settlement (ECF No. 39). Perez filed a Response to Diaz's Motion for Determination of Good Faith Settlement (ECF No. 40), and Diaz filed a Reply (ECF No. 42). The Court held a hearing about the Motion for





1

Determination of Good Faith Settlement on May 2, 2017 and denied that motion without prejudice. *See* Mins. Proceedings (ECF No. 43).[1]

At the conclusion of the May 2, 2017 hearing, the Court raised two main issues with the Motion for Determination of Good Faith Settlement: (1) whether a settlement between a plaintiff and a third-party defendant against whom the plaintiff did not assert a direct claim could support a finding of good faith; and (2) whether Defendant/Third-Party Plaintiff Perez would still have the right to argue at trial (if the case proceeded to trial) pursuant to Nev. Rev. Stat. § 41.141 that Diaz's comparative fault due to negligent entrustment reduces the percentage of the liability attributable to Perez. *See* Mins. Proceedings (ECF No. 43). In other words, assuming the Court approves the good faith settlement and Perez's indemnity and contribution claim against Diaz based on negligent entrustment is discharged, should the issues of fault attributable to Diaz remain in the case as a defense for Perez even though recovery against Diaz would be precluded? *Id.* The Court granted the parties two weeks to file new motions addressing these issues. *Id.* The Court has reviewed and considered the moving and responsive papers. A hearing was held on September 8, 2017. For the reasons stated below, the Court reconsiders Diaz's Motion for Good Faith Settlement (ECF No. 38) and recommends that it should be conditionally GRANTED.

**A. Relevant Facts**

The parties are familiar with the facts of the case and the Court will repeat them only as necessary. This action arises from a non-contact accident between a 2012 Yamaha Cruiser XV250 motorcycle driven by Prado-Guajardo and Perez's 2010 Kenworth T800 DS-Tractor Truck on December 5, 2013. *See* ECF No. 32. Due to injuries Prado-Guajardo sustained from this accident, which she alleges Perez caused,

---

[1] At the May 2, 2017 hearing on Motion for Determination of Good Faith Settlement, the Court granted the parties two weeks to file new *motions* with points and authorities to address the issues raised at the hearing. *See* Mins. Proceedings, at 24:29 (ECF No. 43). The parties instead filed supplemental briefs, as opposed to new *motions*. When parties file "motions," the Clerk provides notices to chambers. No such notices are provided when filings are characterized as "supplemental briefs."

2

Prado-Guajardo brought a personal injury suit against Perez on December 4, 2015 in Nevada District Court. *See* ECF No. 1 at 1. Perez removed the action to Federal District Court on March 11, 2016. *Id.* Prado-Guajardo filed an Amended Complaint in February 2017, naming El Rayo as an additional defendant. *See* ECF No. 32 at 1.

In August 2016, Perez filed a Third-Party Complaint for indemnity and contribution against Third-Party Defendant Shayna Diaz. *See* ECF No. 19. The Third-Party Complaint alleges that Diaz was the registered owner of the motorcycle that Prado-Guajardo operated and the insured under a motorcycle insurance policy on the day of the accident. The Third-Party Complaint alleges that Diaz negligently entrusted the motorcycle to Prado-Guajardo because Prado-Guajardo did not have a license to operate the motorcycle. *Id.* at 2. The motorcycle was insured by State Farm Automobile Insurance Company with policy limits of $15,000. *See* ECF Nos. 38-2; 38-3. After being served with the Third-Party Complaint, Diaz filed an answer on October 26, 2017. *See* ECF No. 27. Diaz "made a Demand for Prior Pleadings and Discovery and began her investigation into the allegations." *See* ECF No. 38 at 3. Based on that investigation, Diaz "made an offer to Prado to tender her $15,000 policy limits to settle the third-party claim asserted against her." *Id.* Prado-Guajardo accepted Diaz's offer, subject to the Court's determination that the settlement was made in good faith. Prado-Guajardo and Diaz are engaged to be married. *See* ECF No. 38-2.

On March 24, 2017, Diaz brought the instant Motion for Determination of Good Faith Settlement, which Prado-Guajardo moved to join. *See* ECF Nos. 38; 39. The Court held a hearing on Diaz's Motion on May 2, 2017. *See* ECF No. 43. The Court denied Diaz's Motion, but granted the parties two weeks to file moving and responsive papers on the issues identified by the Court at the hearing. On May 16, 2017, Diaz filed a Supplemental Brief In Support of Her Motion for Determination of Good Faith Settlement. *See* ECF No. 44. On June 8, 2017, Perez filed a Response to Third-Party Defendant Shayna Diaz'

Supplemental Brief in Support of Her Motion for Determination of Good Faith Settlement. *See* ECF No. 45.

B. Relevant Law

Plaintiff Prado-Guajardo and Third-Party Defendant Diaz seek a determination from this Court that the proposed settlement between them was made in good faith. Under Nev. Rev. Stat. § 17.245(1)(a) and (b):

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and
>
> (b) It discharges the tortfeasor to whom it is given from all liability for contribution and for equitable indemnity to any other tortfeasor.
>
> ...

Under Nev. Rev. Stat. § 17.245(2), equitable indemnity means "a right of indemnity that is created by the court rather than expressly provided for in a written agreement." The goal of Nev. Rev. Stat. § 17.245 is "to encourage settlements by discharging all liability for contribution by a settling tortfeasor to others upon a finding that the settlement was entered in 'good faith.' " *See Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 631 (D. Nev. 2002) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. 913, 926 (D. Nev. 1983)).

The statute also considers the interests of non-settling defendants. Indeed, even if a court determines that a settlement was entered into in good faith, under Nev. Rev. Stat. § 17.245(1), the "non-settling defendant receives a credit in the amount contributed by the settling defendant in any subsequent

4

verdict against that defendant." *See In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927; *see also* Nev. Rev. Stat. § 17.245(1). The determination of good faith under Nevada law is "left to the discretion of the ... court based upon all relevant facts available ...." *See Velsicol Chem. Corp. v. Davidson*, 811 P.2d 561, 563 (1991); *see also Otak Nevada, L.L.C. v. Eight Jud. Dist. Ct.*, 312 P.3d 491, 497 (2013) ("[T]he ... court is vested 'with considerable discretion' in approving good-faith settlements ....").

In *The Doctors Co. v. Vincent*, the Nevada Supreme Court stated that, as evidenced by the ruling *In re MGM Grand Hotel Fire Litigation*, the following factors may be considered in evaluating good-faith issues under Nev. Rev. Stat. § 17.245: "[1] [t]he amount paid in settlement, [2] the allocation of the settlement proceeds among plaintiffs, [3] the insurance policy limits of settling defendants, [4] the financial condition of settling defendants, and [5] the existence of collusion, fraud or tortious conduct aimed to injure the interests of non-settling defendants." *See The Doctors Co. v. Vincent*, 98 P.3d 681, 686 (2004) (quoting *In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927). These factors are not exhaustive. *See Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1060-61 (9th Cir. 2003), *as amended on denial of reh'g* (Apr. 17, 2003); *see also Velsicol Chem. Corp.* 811 P.2d at 563. In the court's exercise of its discretion, among the relevant facts it may choose to consider, the court may indeed take into account the factors discussed by *MGM*, but "Nevada law includes no requirement that a court consider or limit its analysis to the *MGM* factors ...." *See Clark County School District v. Travelers Casualty and Surety Company of America*, No. 2:13-cv-01100-JCM-PAL, 2016 WL 4443160, at *4 (D. Nev. Aug. 18, 2016) (citation omitted).

**C. Discussion**

Applying the Nevada Supreme Court's list of non-exhaustive factors and the policy that underlies them for determining whether a settlement agreement was reached in good faith and considering the relevant points and authorities, including the parties' supplemental briefs and the representations of

5

counsel at the hearing, the Court finds pursuant to Nev. Rev. Stat. § 17.245 that the proposed $15,000 settlement between Third-Party Defendant Diaz and Plaintiff Prado-Guajardo was made in good faith subject to the conditions described below.

At the May 2, 2017 hearing, the Court explained that the proposed settlement on its face satisfies Nev. Rev. Stat. § 17.245's good-faith requirement. The Court predicated its finding on, *inter alia*, the *MGM* factors. The settlement amount is for $15,000 which Diaz's insurance company would pay toward Prado-Guajardo's damages if any are awarded to her at the conclusion of this case. Diaz made an offer to Prado-Guajardo to tender her $15,000 insurance policy limits to settle the third-party claim asserted against Diaz by Perez, which Diaz alleges is "the extent of coverage that [she] [was] able to afford." *See* ECF No. 38-2 at 2; *see also* ECF No. 38-3 at 1. Diaz also claims that she does "not have funds sufficient to pay any judgment rendered against [her] in excess of $15,000." *Id*. Although discovery is still ongoing, at the May 2, 2017 hearing, Counsel for Diaz represented Diaz's occupation as a cashier at local auto parts store. *See* Mins. Proceedings (ECF No. 43). If the Court approves the settlement, Perez would receive a credit in the amount contributed by Diaz through her insurer in any subsequent verdict against Perez. *See In re MGM Grand Hotel Fire Litig.*, 570 F. Supp. at 927; *see also* Nev. Rev. Stat. § 17.245(1). Perez's ultimate liability, if there is any, would be reduced by $15,000.

Perez argues that the amount of the proposed settlement is disproportionately lower than Diaz's fair share of Prado-Guajardo's damages. *See* ECF No. 40 at 5. Perez points out that Prado-Guajardo is seeking more than $2,724,819.29 in damages. *Id*. Perez argues that Diaz bears some liability for negligently entrusting the motorcycle to Prado-Guajardo, who had neither formal motorcycle training nor a motorcycle license. *Id*. at 7. Given the amount of damages Prado-Guajardo is claiming, Perez argues that the proposed settlement is disproportionately lower than Diaz's fair share of Prado-Guajardo's alleged damages. *Id*.

6

A settlement is in good faith so long as it is not "disproportionately lower than [the settling defendant's] fair share of damages." See Velsicol Chem. Corp., 811 P.2d at 564. So, a settlement for less than what the other defendants paid will generally be in good faith when the settling defendant's potential liability is minimal. See Otak Nevada, L.L.C., 312 P.3d at 497 (citing Bay Dev. Ltd. v. Superior Court, 791 P.2d 290, 299 (1990) (upholding a settlement of $30,000 in a case seeking damages in excess of $1 million because there was evidence that the settling defendant "bore only minor responsibility" for the plaintiffs' injuries)).

To the extent Diaz bears any liability, the Court finds that, based on the totality of circumstances in this case, Diaz's liability exposure would likely be minimal and considerably less than the liability exposure for Perez. See The Doctors Co., 98 P.3d at 690 ("Good-faith determinations are governed by a myriad of considerations ..., including the liability permutations arising from the merits of the contribution and indemnity claims."). Perez's responsive papers do not address Diaz's argument that, in the absence of a good faith determination, any claim for equitable indemnity would, as a practical matter, be barred because of (1) the absence of a pre-existing legal relationship between Diaz and Perez and (2) Perez's active fault for the accident at issue.[2] Diaz acknowledges that, in the absence of a good faith determination, a claim for contribution may not be similarly barred, but argues that such a claim is weak.

---

[2] Equitable indemnity "allows a defendant to seek recovery from other potential tortfeasors" only when a defendant "who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party." See Pack v. LaTourette, 277 P.3d 1246, 1248-49 (Nev. 2012) (quotation omitted). Equitable indemnity "is not usually available between joint tortfeasors." See Black & Decker (U.S.), Inc. v. Essex Grp., Inc., 775 P.2d 698, 699 (Nev. 1989). However, an exception to this rule exists where there is a "preexisting legal relation" between the joint tortfeasors, or the primary tortfeasor has "some duty ... to protect the secondary tortfeasor." See Pack, 277 P.3d at 1249 (quotation omitted). Even under this exception, if a party is "actively negligent," it "has no right to indemnity from other tortfeasors." Pack, 277 P.3d at 1249. A claim of active fault on the part of the party seeking indemnity in connection with monies paid in settlement is an affirmative defense to the separate indemnity action. See The Doctors Co., 98 P.3d at 689; see also Reid v. Royal Insurance Co., 80 Nev. 137, 143-46, 390 P.2d 45, 48-49 (1964) (noting that a person may not seek implied indemnity when found in pari delicto with the person against whom indemnity recovery is sought).

7

Though a contribution claim based on a theory of negligent entrustment has more room for argument, a review of the facts of the case shows the merits of such a claim to lack vigor. Diaz's liability for the accident is likely to be minimal, at most, relative to Perez.[3]

The unique facts of this case raise a concern regarding collusion which the Court removes by conditionally granting the Motion. Perez argues that the settlement is the result of collusion between Prado-Guajardo and Diaz because Prado-Guajardo never asserted a claim against Diaz, nor can she because the statute of limitations has run and it is too late for Prado to add Diaz as a defendant. *See* ECF No. 40 at 9-10. Perez argues that "the only purpose that Diaz could possibly have for entering into the purported settlement with [Prado-Guajardo] is to injure Defendants' right of contribution and equitable indemnity against Diaz." *Id.* Diaz responds that the purpose of every motion for good faith determination under Nev. Rev. Stat. 17.245 is at bottom "to cut off third party indemnity and contribution rights." *See* ECF No. 42 at 8. Diaz asserts that she "has an interest in buying her peace and precluding indemnity and contribution claims against her," but this interest is not evidence of collusion. *Id.*

The Court agrees. In *Otak Nevada, L.L.C. v. Eight Jud. Dist. Ct.*, some of the defendants ("P & R") challenged another defendant's ("Otak Nevada, LLC's") settlement with the plaintiffs on the ground that the settlement was a tactical decision designed to cut off P & R's equitable indemnity and contractual

---

[3] To show negligent entrustment, Perez must prove that Diaz knowingly entrusted the motorcycle to "an inexperienced or incompetent person" causing Prado-Guajardo's damages. *See Zugel by Zugel v. Miller*, 688 P.2d 310, 312 (1984); *see also Connell v. Carl's Air Conditioning*, 634 P.2d 673 (1981) (holding that negligent entrustment in Nevada "does not extend to one who neither entrusts nor places a vehicle with another (citation omitted) or one who has no right to control the vehicle." (citing *Drake v. Morris Plan Company of California*, 53 Cal. App. 3d 208, 125 Cal. Rptr. 667 (Ct. App. 1975) (no liability on part of one who financed sale of automobile to allegedly incompetent driver)); *Terrell v. Cent. Washington Asphalt, Inc.*, 168 F. Supp. 3d 1302, 1310 (D. Nev. 2016). The parties dispute whether Diaz entrusted the motorcycle to Prado-Guajardo, whether the entrustment was negligent, and whether there is a causal connection between the negligence and the resulting damages. With regard to the latter, Perez was cited for failing to yield the right of way to oncoming traffic as he turned his semi-truck onto the street. *See* ECF No. 38-1 at 1 ("[Perez] failed to yield the right of way to oncoming [Prado-Guajardo] and a non-collision had occurred. To avoid a potential collision into [Perez], [Prado-Guajardo] veered to the left and fell to the left."). Prado-Guajardo was not cited for her maneuvering of the motorcycle to avoid a collision with Perez. *But see* ECF No. 38-1 at 1 ("[Perez] indicated on scene [that] ... he ensured the roadway was cleared and [Prado-Guajardo] was at a safe distance, prior to entering the roadway."). Prado-Guajardo was cited for operating the motorcycle without a license.

rights. *See Otak Nevada, L.L.C.*, 312 P.3d at 497. The Nevada Supreme Court rejected this argument and held that "[a] settlement is not considered made in bad faith simply because its purpose is to eliminate third-party liability." *See id.* (citing *Dixon v. Nw. Publ'g Co.*, 166 Ill. App. 3d 745, 520 N.E.2d 932, 937 (1988)); *see also The Doctors Co.*, 98 P.3d at 687 (providing that the district court may consider the strengths and weaknesses of any known contribution or equitable indemnity claims). The desire to avoid indemnity and contribution is a significant motive in encouraging settlement. Consequently, to say that a settlement prompted by a party's wish to avoid indemnity and contribution is necessarily in bad faith could hardly be correct. *See Vertecs Corp. v. Fiberchem, Inc.*, 669 P.2d 958, 961 (Alaska 1983). The Court also notes that Prado-Guajardo and Diaz are engaged to be married. *See* ECF No. 38-2. This is undoubtedly a strong indicator of collaboration or cooperation in this lawsuit, but not necessarily collusive conduct showing bad faith.

Based on the Nevada Supreme Court's list of non-exhaustive factors, the Court is inclined to find that Diaz's release pursuant to the proposed settlement between Diaz and Prado-Guajardo was made in good faith. The Court is not limited in its analysis to the *MGM* factors, however. *See Velsicol Chem. Corp.*, 811 P.2d at 563 (declining to adopt the "California rule," contrary to this court's conclusion in *MGM*); *see also Clark County School District*, 2016 WL 4443160, at *4. The Court must use its "considerable discretion" to consider the "fairness and overall appropriateness of the proposed settlement" and determine whether a settlement was reached in good faith "based upon all relevant facts available ...." *See id.*; *see also Duk*, 320 F.3d at 1060. At the May 2, 2017 hearing the Court voiced its concerns about the proposed settlement involving a plaintiff and a third-party defendant against whom the plaintiff did not assert a direct claim and if the Court found good faith, Perez's comparative fault defense based on Diaz's negligent entrustment would be precluded by Nevada law. *See* Nev. Rev. Stat. § 41.141. The Court found that Defendant/Third-Party Plaintiff Perez should be allowed to argue at trial pursuant to Nev.

Rev. Stat. § 41.141 that Diaz's comparative fault due to negligent entrustment should reduce Perez's percentage of liability. The Court held that it would find the proposed settlement to be made in good faith only to the extent that the issues of fault attributable to Diaz remain in the case as an empty chair defense for Perez although recovery against Diaz would be precluded.

Diaz argues that a third-party defendant like her can settle directly with a plaintiff, even where the plaintiff has not made direct claims against that third-party defendant. *See* ECF No. 44 at 5. In *Duk v. MGM Grand Hotel, Inc.*, Fernando Duk suffered a heart attack after being detained by the MGM Grand Hotel, Inc.'s ("MGM Grand's") security for drunk and belligerent behavior. *See Duk*, 320 F.3d at 1054-55. Duk sued MGM Grand. *Id.* MGM Grand subsequently filed a third-party complaint against American Medical Response (ambulance company), Las Vegas Metropolitan Police Department, and Clark County Detention Center. *Id.* Although Duk did not bring direct claims against these third-party defendants, Duk subsequently reached settlements with each of them. *Id.* MGM challenged Duk's settlement with third-party defendants which the district court found was in good faith. *Id.* The Ninth Circuit Court of Appeals found no abuse of discretion with respect to the district court's good faith determination. *Id.* at 1060-61. In Perez's supplemental brief (ECF No. 45), Perez does not address the merits of *Duk v. MGM Grand Hotel, Inc.* or Diaz's argument that a third-party defendant can settle directly with a plaintiff even where no direct claims have been asserted.

The Court was also concerned with the impact that a finding of good faith would have on Perez's ability to argue Diaz's comparative fault as a defense at trial with Diaz no longer a party to the case. *See* Mins. Proceedings (ECF No. 43). Diaz argues that under "relevant case law, there is no impediment to [Perez's] ability to put forth a full and complete defense, including that of Diaz's negligence." *See* ECF No. 44 at 5. Perez responds that if Diaz is dismissed from the case under Nev. Rev. Stat. § 17.245, he will be stripped of his right to argue that Diaz was *partially* at fault for the accident. *But see Banks v. Sunrise*

*Hosp.*, 102 P.3d 52, 67 (Nev. 2004) ("NRS 17.245 does not prevent a defendant from pointing the blame at another defendant or from arguing that it was not responsible for the plaintiff's injury" and that the remaining defendant is "free to argue that [settling defendant's] negligence proximately caused [the plaintiff's] injury, rather than the [remaining defendant's] ...."); *Thompson v. Autoliv Safety Tech., Inc.*, No. 2:09-cv-1375-JAD-PAL, 2013 WL 6086658, at *3, fn.8 (D. Nev. Nov. 19, 2013) ("Nev. Rev. Stat. Ann. § 17.245 does not bar non-settling defendants from empty chairing settling defendants ...."). In particular, Perez asserts that a finding of good faith here would prohibit him from including Diaz's name on the jury verdict form and from asking the jurors to apportion away from Perez Diaz's degree of fault for this accident. *See* ECF No. 45 at 4.

Under Nev. Rev. Stat. § 41.141(2)(b)(2), the jury may only apportion fault as between parties to the case. A jury may not apportion fault to non-parties, and evidence and argumentation directed to showing a non-party's comparative fault is therefore not admissible. *See Banks*, 102 P.3d at 67 ("We conclude that NRS 41.141(3) has no bearing on the issues of whether [Defendant] could argue a nonparty's fault ... and whether such an argument per force leads to the conclusion that the jury [may] reduce[] [an] award based upon the nonparty's relative culpability. First, NRS 41.141 only prevents admission of evidence in support of a "comparative fault" or apportionment analysis of the case as to nonparties, and a jury may only "compare" the negligence as between parties and nonparties."); *see also Phillips v. C.R. Bard, Inc.*, No. 3:12-cv-00344-RCJ, 2015 WL 260873, at *4 (D. Nev. Jan. 21, 2015). Under Nev. Rev. Stat. § 41.141, Perez may not argue that Diaz was *partially* at fault or adduce evidence tending only to show comparative fault. *See Phillips*, 2015 WL 260873, at *4.

However, "[n]othing in NRS 41.141 prohibits a party defendant from attempting to establish that either no negligence occurred or that the *entire* responsibility for a plaintiff's injuries rests with nonparties ...." *See id.* (emphasis added); *see also* Nev. Rev. Stat. § 41.141(2)(b)(2) ("If the jury determines the

11

plaintiff is entitled to recover, it shall return ... [a] special verdict indicating the percentage of negligence attributable to each party remaining in the action."). That is, Perez may argue that Diaz was entirely at fault and that Perez was not at fault at all, and Perez may adduce otherwise admissible evidence in support of that argument. *See* ECF No. 40 at 7 ("[T]here is evidence from which the jury could find that ... Diaz has significant liability for the subject no-contact incident. If Diaz had not negligently entrusted her motorcycle to [Prado-Guajardo] on the day of this no-contact incident, this incident would not have happened in the first place.").

As noted by Justice Michael L. Douglas of the Nevada Supreme Court, in many cases "[a]ny unsuccessful effort made by a [non-settling] defendant to show that a settled defendant is 100 percent at fault is essentially an argument of comparative negligence." *See Piroozi v. Eighth Jud. Dist. Ct.*, 363 P.3d 1168, 1175, fn.7 (2015) (Douglas, J., Cherry, J., and Gibbons, J., dissenting); *see also* Restatement (Third) of Torts: Apportionment Liab. § 26 (2000) ("No party should be liable for harm it did not cause, and an injury caused by two or more persons should be apportioned according to their respective shares of comparative responsibility.").[4] Even if the settling defendants' names are excluded from the jury verdict forms and the jury is directed not to attribute fault to nonparties, that such efforts lead to some jury speculation and affect judgments is not only possible, but likely. As a practical matter, however, in this case there is no basis for an argument that Diaz was entirely at fault. Perez was cited for failing to yield

---

[4] *Compare* Nev. Rev. Stat. § 41.141(4) ("Where recovery is allowed against more than one defendant in such an action, ... each defendant is severally liable to the plaintiff only for that portion of the judgment which represents the percentage of negligence attributable to that defendant."), *with* Restatement (Third) of Torts: Apportionment of Liability § B19 (2000) ("If one or more defendants may be held severally liable for an indivisible injury, and at least one defendant and one other party, settling tortfeasor, or identified person may be found by the factfinder to have engaged in tortious conduct that was a legal cause of the plaintiff's injury, each such party, settling tortfeasor, and other identified person is submitted to the factfinder for an assignment of a percentage of comparative responsibility"), *and id.* § 11, cmt. (a) (2000) ("[B]ecause liability is limited to defendants' several share of damages, other nonparties may be submitted to the factfinder for an assignment of a percentage of comparative responsibility ... [,] not to adjudicate their liability, but to enable defendants' comparative share of responsibility to be determined.").

12

the right of way to oncoming traffic as he turned his semi-truck onto the street. *See* ECF No. 38-1 at 1. To avoid a potential collision, Prado-Guajardo veered her motorcycle out of the way of the semi-truck and fell off. *Id.* Although Prado-Guajardo was cited for driving without a license, she was not cited for her maneuvering of the motorcycle to avoid a collision with Perez. *Id.* Because the fault attributable to Diaz is likely minimal, any argument that Diaz was entirely at fault (as opposed to partially at fault) or that Perez was not at fault at all would not be persuasive, and indeed, may even adversely affect the jury.

If the proposed settlement is found not to have been made in good faith, Perez will be able to argue at trial that Diaz was partially at fault and adduce evidence in support of a "comparative fault" or apportionment analysis of the case. If good faith is found, the strict application of Nev. Rev. Stat. § 41.141(3) would rob Perez of his ability to argue at trial that (1) Third-Party Defendant Diaz was partially at fault—as opposed to entirely at fault—for the motorcycle accident due to negligent entrustment, and (2) Diaz's name should be inserted on the applicable jury verdict forms and that the jury should apportion fault. This result is particularly harsh in light of the unique circumstances of this case. Further complicating matters is that if a non-settling defendant could argue a theory of comparative negligence as to settled defendants, then he or she would only be liable for his or her proportional fault in relation to them. *See Piroozi*, 363 P.3d at 1174. Because any judgment issued against this non-settling defendant in theory would amount to his or her exact liability, he or she would then receive a windfall when Nev. Rev. Stat. § 17.245(1)(a) reduced that judgment by all settlement amounts. *Id.*

With that said, in applying the *In re MGM Grand Hotel Fire Litig.* factors and the policy underlying them, the Court finds that Diaz's release pursuant to the proposed settlement was made in good faith under Nev. Rev. Stat. § 17.245. As a result, Perez's claims against Diaz for contribution and equitable indemnity should be dismissed. State Farm Automobile Insurance Company will pay $15,000 toward Prado's damages. Perez's ultimate liability, if there is any, will be reduced pursuant only to the

13

extent that the fault allocated to Diaz by the jury, if any, exceeds $15,000. This avoids any potential windfall to Perez. In considering "the *fairness* and overall appropriateness of the proposed settlement" and in the exercise of its "considerable discretion," the Court finds that the settlement is in good faith and that Perez should be permitted to argue as a defense at trial, assuming this case proceeds to trial, that Diaz's comparative fault for the accident due to negligent entrustment should reduce the percentage of liability attributable to Perez. Permitting the issue of fault attributable to Diaz to remain in the case as a defense gives Prado-Guajardo and Diaz the benefit of their settlement without depriving Perez of defenses he has properly asserted in this case. *See Velsicol Chem. Corp.*, 811 P.2d at 563 (emphasis added); *see also Otak Nevada, L.L.C.*, 312 P.3d at 497.

Accordingly, and for good cause shown,

IT IS HEREBY RECOMMENDED that Third-Party Defendant Shayna Diaz and Plaintiff Deyssi Janneth Prado-Guajardo's Motion for Determination of Good Faith Settlement (ECF No. 38) be GRANTED. If the Honorable Gloria M. Navarro adopts the Report and Recommendation: (1) Defendant/Third-Party Plaintiff Martin Guzman Perez and Defendant El Rayo should be allowed to argue that Diaz was partially at fault and adduce evidence tending to show comparative fault even though Diaz would no longer be a part of this case and further recovery against Diaz is precluded, and (2) Perez's ultimate liability, if there is any, should be reduced pursuant to Nev. Rev. Stat. § 17.245(1)(a) only to the extent that the fault allocated to Diaz by the jury, if any, exceeds $15,000.

IT IS SO RECOMMENDED.

DATED this 8th day of September, 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

14